## Commonwealth v. King

*Edward D. Trexler*, for Commonwealth.
*Forry & Forry*, for defendant.

SHANAMAN, J., December 30, 1954.—This was a prosecution for alleged violation of fishing regulations applying to inland waters: Act of May 2, 1925, P. L. 448, sec. 20, as amended, title 30, 30 PS §20, as follows:

"§20. Closed seasons. There shall be no fishing between the fourteenth day of March and five o'clock antemeridian on the fifteenth day of April in any year, except in rivers, ponds and lakes not stocked with trout . . . Ponds and lakes in which fishing is prohibited shall be posted by the commission."

After conviction and sentence to pay a fine of $5 and costs of $11.90 before the Hon. George A. Reeser, justice of the peace, defendant appealed to the court of quarter sessions. At the hearing before one of the judges of that court, counsel stipulated that defendant,

Jay H. King, was fishing on Sunday, April 11, 1954, at about 3 p.m., in a body of water known as Reeser's Dam, Reeser's Pond and Reeser's Mill Pond, situate in Bern Township, Berks County, Pa.; that defendant was duly charged with a violation of the statute; that the body of water was not stocked with trout; that neither it nor the surrounding area was posted and that defendant had a fishing license. Counsel agree that the only question before the court is whether the aforesaid body of water is a pond or lake within the meaning of the statute. At the request of counsel the trial judge visited in their company the waters in question and their environs.

An inspection of the scene reveals that the body of water was created by a dam of considerable height and length, built many years ago across a ravine, and formerly used to supply water to a mill race for the operation of a grain grinding mill. The dam still stands, and the body of water thus created may be as much as 200 feet wide at its widest point, and runs back for several hundred feet until its shallows merge into slight meanders, visible and barely visible in marshy vegetation, of a distinct bedded stream which with more concentrated volume flows through areas in the vicinity as a rural stream until it reaches the ravine, where its flow is dammed. The bed of the body of water thus created contains some springs which feed the volume. The outflow is over the breast of the dam, thence into a large pipe passing beneath a public road and thence by a stream into the Schuylkill River.

Counsel for both sides agree that the dictionary definition of "pond" embraces a body of water artificially confined. The Commonwealth contends that the statute itself indicates that only natural ponds were intended in using the word "ponds". Defendant opposes this. It is difficult to draw satisfactorily definite inference from the Fish Law itself. On the one hand, the

Acts of May 29, 1935, P. L. 263, sec. 1; May 25, 1937, P. L. 801, sec. 3, 30 PS §191, and the Act of April 20, 1949, P. L. 623, sec. 1, 30 PS §185, contain such language as "in the natural stream on which such dam is located", and "the waters of the pool above said dam". The suggestion here, from the use of said language, would be favorable to the contention of the Commonwealth, because the word "pool" is used instead of "pond". On the other hand, the Act of May 2, 1925, P. L. 448, and the Act of August 21, 1953, P. L. 1222, sec. 1, 30 PS §§56-58, create a new class of waters, named "farm fish pond", and employ the language "a farm on which is constructed an artificial pond, not exceeding two acres in surface area", and "to fish in such pond". These acts give special rights to the owners or lessees of the "farm" which contains the "pond", and incidentally recognize that a pond may be artificial as well as natural in the intent of the fish law. Otherwise, the legislature could have more naturally used the word "pool" as it did in the other acts above cited. Defendant suggests that the inference from this language is in its favor. It may be taken from this language that in the sense of the fish law, a pool created by the damming of a stream may be a pond. However, the true meaning of the section creating closed seasons remains unclear. In these uncertain cases, administrative interpretation, as revealed by the practice of the enforcing authorities of the State, is sometimes helpful, and the law of statutory construction permits it to be considered for such purpose. In Berks County the City of Reading has provided an extensive water supply by damming a considerable local stream, known as the Maidencreek. A rather large body of water has thus been formed, fed also by numerous lesser brooks, and streams that empty into it. The outlet is a continuation of the Maidencreek, which in its course below the dam flows finally into the

Schuylkill River. The waters accumulated by the dam are known as Lake Ontelaunee. The opposing counsel agree in their briefs that the Fish Commission of the State of Pennsylvania, or its enforcing officers, have permitted and do permit fishing in Lake Ontelaunee during the closed season that defendant is charged with violating. It seems difficult to hold that Lake Ontelaunee is a lake within the meaning of the section sought to be enforced, without also holding that Reeser's Pond is a pond within the same meaning and intent of the law. Since the instant matter involves the enforcement of a penalty, consisting of a statutory fine and costs, a reasonable doubt as to the intent of the law should be resolved on familiar principles, in favor of defendant.

Defendant having been duly tried de novo by a judge of this court, the trial judge now finds defendant not guilty.